***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of Findings of Fact Numbers 4, 15 and 16, Conclusions of Law Numbers 3 and 6, and Award Numbers 1 and 3 and certain minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Defendant-Carrier Wausau Insurance provided workers' compensation insurance for Defendant-Employer Freeway Foods, Inc. from April 5, 1995 until August 31, 1998.
4. Defendant-Carrier Wausau Insurance paid indemnity benefits to plaintiff from November 23, 1996 until December 20, 1996 following plaintiff's surgery on her left shoulder. Defendant-Carrier Wausau paid temporary partial disability benefits from January 25, 1997 until February 28, 1997.
5. Defendant-Carrier TIG Insurance/Managed Comp provided workers' compensation insurance for Defendant-Employer Freeway Foods, Inc. on June 10, 2000.
6. Defendant-Carrier TIG Insurance/Managed Comp paid $1,150.00 in indemnity benefits on an Industrial Commission Form 63 dated August 31, 2000 for plaintiff's alleged June 10, 2000 injury. Defendant-Carrier TIG Insurance/Managed Comp made a timely denial of liability for plaintiff's June 10, 2000 injury on an Industrial Commission Form 61 dated August 31, 2000.
7. Plaintiff has not worked for Defendant-Employer Freeway Foods, Inc. since on or about June 10, 2000.
8. The employee's average weekly wage on July 6, 1995 was $225.00.
9. The employee's average weekly wage on June 20, 2000 will be determined by a properly submitted Form 22.
10. The issues to be determined from this hearing are as follows:
 a) Whether plaintiff sustained an injury by accident while in the course and scope of her employment with defendant-employer on June 10, 2000.
 b) If so, what, if any, benefits is she entitled to recover under the Workers' Compensation Act?
 c) Which carrier is responsible for any benefits plaintiff may be entitled to receive?
d) Is plaintiff currently totally disabled?
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff was born on April 20, 1943 and was 57 years old at the time of the hearing. She did not graduate from high school but had obtained a GED high school equivalency.
2. Plaintiff has spent almost all of her adult life working in restaurants and worked for Defendant-Employer Freeway Foods ( hereinafter Waffle House) as a sales person/waitress from approximately 1986 until June 2000. Plaintiff's job required her to take orders and deliver food to the customers, wash dishes and clean the restaurant.
3. Plaintiff suffered several injuries while at Waffle House and underwent surgeries to her right shoulder in 1989 and 1990. However, she returned to work at Waffle House following each of these injuries.
4. Plaintiff suffered injuries to her upper extremities on July 6, 1995, at which time her average weekly wage was $225.00. As a result of plaintiff's injuries, she underwent left shoulder surgery in November 1996 to repair her rotator cuff. As a result, Defendant-Carrier Wausau Insurance paid total disability benefits to plaintiff from November 23, 1996 until December 20, 1996. Plaintiff returned to work at Waffle House following the 1996 left shoulder surgery. Thereafter, Defendant-Carrier Wausau paid temporary partial disability benefits from January 25, 1997 until February 28, 1997.
5. Plaintiff testified that while Waffle House had offered to allow her to work as a customer greeter or cashier, such work was not available on a 40-hour a week basis and would not have given her the opportunity to earn tips as she did waiting tables. Plaintiff continued to work full-time as a salesperson until June 2000. She testified that she earned $350 to $400 a week during the year preceding June 10, 2000.
6. On June 10, 2000, plaintiff arrived at work at approximately 6:30 a.m. and discovered that the grill operators had not cooked grits. Plaintiff picked up a large pot that is used to cook grits and placed it on the drain board in the kitchen. She used a smaller pot to fill up the large pot with water. Plaintiff then attempted to pick up the large pot, which was filled with water by holding the handle with her right arm and wrapping her left arm around the pot. Plaintiff lost control of the pot and it fell into the sink, causing plaintiff to fall forward with the pot. Plaintiff felt immediate pain in her neck. She reported the incident to her manager and took pain medication, but was unable to complete her scheduled shift. A co-employee took her to the emergency room at Durham Regional Hospital.
7. Dr. Ralph Liebelt, an orthopaedic surgeon with Triangle Orthopaedic Associates, testified that he had been treating plaintiff since 1990. Plaintiff underwent surgery to her right shoulder for a rotator cuff repair and acromioplasty in September 1989. She then reinjured the right shoulder, requiring another surgery to reinforce the rotator cuff repair in January 1990. Dr. Liebelt stated that plaintiff regained a fair amount of motion in her right shoulder but continued to experience significant pain in the shoulder and developed a rotator cuff arthropathy. She also began to develop symptoms related to compensating for the right shoulder.
8. Dr. Liebelt testified that plaintiff became more symptomatic on in her left shoulder and underwent surgery for a left rotator cuff repair and acromioplasty in November 1996.
9. Dr. Liebelt said that plaintiff has very consistently taken low doses of narcotic pain medications throughout her treatment but that she has required little pain medication when she is not attempting to work. Dr. Liebelt testified that plaintiff has continued to see him on a regular basis and has had injections in a variety of different areas in her upper extremities for pain relief. Dr. Liebelt said that he has sometimes refused to give plaintiff injections because the synthetic steroids that are used can weaken the tendons and damage the soft tissues if given too frequently.
10. Dr. Liebelt testified that he had recommended to plaintiff that she stop working at Waffle House due to her physical limitations and the physically demanding nature of the job.
11. Dr. Liebelt testified that plaintiff had seen physician assistant Sam Perry on June 20, 2000 in connection with her June 10, 2000 cervical injury. Dr. Liebelt indicated plaintiff had required more pain medication following the June 2000 injury than ever before that date. Furthermore, unlike with previous injuries at Waffle House, plaintiff had not been able to return to work following the June 2000 injury.
12. Dr. Liebelt testified that plaintiff's injury on June 10, 2000, aggravated her pre-existing cervical degenerative disk disease and cervical radiculopathy and contributed to plaintiff's inability to work. Dr. Liebelt reviewed plaintiff's job description and stated that plaintiff was incapable of performing the basic job requirements. Dr. Liebelt also testified that plaintiff is at a substantial risk of needing future medical treatment for her injuries.
13. Dr. Robert Wilson of Triangle Orthopaedic Associates testified that plaintiff would not be able to perform the job at Waffle House.
14. As a result of the injury by accident plaintiff suffered on June 10, 2000, plaintiff became disabled from her usual employment with Defendant-Employer Freeway Foods and has been unable to obtain regular employment in the competitive labor market since that date due to her physical limitations and lack of transferable skills.
15. As a result of her July 6, 1995 injury, plaintiff sustained permanent partial impairments to her right arm in the amount of 5% and to her left arm in the amount of 17%.
16. Based upon plaintiff's testimony and Defendant-Carrier TIG Insurance/Managed Comp.'s failure to submit a timely and properly completed Form 22, plaintiff's average weekly wage on June 10, 2000 was $350.00, yielding a weekly compensation rate of $233.35.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On July 6, 1995, plaintiff suffered an injury by accident arising out of and in the course and scope of her employment with defendant-employer. N.C.G.S. § 97-2(6).
2. As a result of her upper extremity injury on July 6, 1995, plaintiff is entitled to payment of all reasonably necessary medical expenses incurred as a result of her upper extremity injury for treatments, examinations and evaluation tending to effect a cure, give relief or to lessen her period of disability by Defendants Freeway Foods and Wausau Insurance, the carrier on the risk on July 6, 1995. N.C.G.S. §§ 97-25;97-25.1.
3. As a result of her injury on July 6, 1995, plaintiff is entitled to payment by Defendants Freeway Foods and Wausau Insurance for her permanent partial impairment to her upper extremities in the amount of 5% to the right arm and 17% to the left arm at a weekly compensation rate of $150.00, subject to a credit for any temporary partial disability paid. Plaintiff is entitled to select the more munificent remedy. N.C.G.S. §§ 97-31; 97-30.
4. On June 10, 2000, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant-employer. N.C.G.S. § 97-2(6).
5. As a result of her cervical injury on June 10, 2000, plaintiff is entitled to payment of all reasonably necessary medical expenses incurred as a result of her injury for treatments, examinations and evaluation tending to effect a cure, give relief or to lessen her period of disability by Defendants Freeway Foods and TIG Insurance/Managed Comp, the carrier on the risk on June 10, 2000. N.C.G.S. §§ 97-25; 97-25.1.
6. As a result of her injury by accident on June 10, 2000, plaintiff is entitled to temporary disability compensation to be paid by Defendants Freeway Foods and TIG Insurance/Managed Comp at the rate of $233.35 a week for the period beginning June 10, 2000 and continuing for so long as plaintiff remains disabled or until further order of the Industrial Commission, subject to a credit for amounts paid pursuant to the December 10, 2001 Full Commission Order. N.C.G.S. § 97-29.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to attorney's fees hereinafter approved, Defendants Freeway Foods and Wausau Insurance shall pay plaintiff for her permanent partial impairment to her upper extremities in the amount of 5% to the right arm and 17% to the left arm at a weekly compensation rate of $150.00, subject to a credit for any temporary partial disability paid.
2. Defendants Freeway Foods and Wausau Insurance shall pay all reasonably necessary medical expenses incurred or to be incurred by plaintiff as a result of her July 6, 1995 upper extremity injury when bills for the same are approved in accordance with Commission procedure.
3. Subject to the attorney's fees hereinafter approved and the credit allowed for payments made pursuant to the December 10, 2001 Full Commission Order, Defendants Freeway Foods and TIG Insurance/Managed Comp shall pay temporary total disability compensation at the rate of $233.35 per week for the time period from June 10, 2000 and continuing for so long as plaintiff remains disabled or until further order of the Commission. The portion of this award that has accrued shall be paid in a lump sum. Carrier-Defendant TIG Insurance/Managed Comp shall be entitled to a credit for $1,150.00 in indemnity benefits paid on an Industrial Commission Form 63 dated August 31, 2000 and for any payments made pursuant to the December 10, 2001 Full Commission Order.
4. Defendants Freeway Foods and TIG Insurance/Managed Comp shall pay all reasonably necessary medical expenses incurred or to be incurred by plaintiff as a result of her June 10, 2000 cervical injury when bills for the same are approved in accordance with Commission procedure.
5. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel.
6. Defendants shall pay the costs of this action.
This the ___ day of July 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER